AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California



FILED
CLERK, U.S. DISTRICT COURT

05/13/25

CENTRAL DISTRICT OF CALIFORNIA
BY: ___KC___ DEPUTY

United States of America,
    Plaintiff,

v.

Daniel Avalos-Lopez,
    aka "Marcos Agustin Morales Garcia,"
    Defendant

Case No.   5:25-mj-00290

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, Martin Burry, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about July 19, 2024, in the county of Riverside in the Central District of California, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. § 1326(a) | Illegal Alien Found in the U.S. Following Deportation or Removal |

This criminal complaint is based on these facts:

  *Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
_____
*Complainant's signature*

Martin Burry, Special Agent - FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:    May 13, 2025
_____

_____
*Judge's signature*

City and state:   Riverside, California
_____

Hon. Sheri Pym, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: John D. Ellis (x12468)

## <u>AFFIDAVIT</u>

I, Martin Burry, being duly sworn, declare and state as follows:

## I. <u>PURPOSE OF AFFIDAVIT</u>

1.    This affidavit is made in support of a criminal complaint against and arrest warrant for Daniel Avalos-Lopez, also known as "Marcos Agustin Morales Garcia" ("defendant"), charging him with violating Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation or Removal.

2.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show that there is sufficient probable cause for the requested complaint and warrant and does not purport to set forth all my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II. <u>BACKGROUND OF SPECIAL AGENT MARTIN BURRY</u>

3.    I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"). I have been a SA with FBI since February 2011. I received basic law enforcement training at the FBI Academy in Quantico, Virginia from February 2011 to August 2011. This training included instruction on procedures and techniques for conducting criminal investigations. Since completing FBI Academy in August 2011, I have participated in several National

Security investigations involving court-authorized interception of wire and electronic communications. I have participated in investigations concerning the identification of co-conspirators through use of telephone records, financial statements, utility bills, photographs and other documents. I have directed and assisted in the handling of confidential sources to gather intelligence through various methods, including through consensual monitoring. In the course of my career as an FBI SA, I have had extensive experience in reviewing Federal, state, local and commercial databases to identify facts in furtherance of my investigations.

4.    I am currently assigned to the Homeland Security Investigations ("HSI") Integrated Operations Group Task Force ("Task Force"). As part of this Task Force, I investigate various immigration crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations. As a result of my collaboration with these DHS employees on this Task Force, I am familiar with DHS databases that are used to identify individuals who are subject to prosecution for immigration crimes.

III. **TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES**

5.    Based on my training and experience and communication with DHS employees on the Task Force, I know the following:

a.    Every person has a unique set of fingerprints. I also know that unique identification numbers – including, but

2

not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigations ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints.  In many cases, the Department of Homeland Security ("DHS") and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b.    Moreover, when a person is fingerprinted by DHS agencies, such as ICE (formerly INS), those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file").  An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage.  That A-file is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted into the United States, pursuant to, for example, a non-immigrant visa.

6.    Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process.  That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is

3

searchable within various law enforcement indices and comparable
with other government records, including those belonging to DHS
and those associated with an A-file and A-number.  A match
between fingerprint identifiers can therefore be used to confirm
the identity of a person associated with specific records,
including immigration records indicating whether that person is
amenable to immigration enforcement action.

#### IV. <u>STATEMENT OF PROBABLE CAUSE</u>

7.   On or about May 11, 2025, the ICE Pacific Enforcement
Response Center ("PERC") – an ICE center responsible for vetting
and researching the arrests of suspected foreign nationals –
received an electronic notification based on defendant's
biometric fingerprint information that he was arrested by
Riverside Sheriff's Office, within the Central District of
California, for grand theft and knowingly receiving stolen
property, in violation of California Penal Code Sections 487(A)
and 496(A).  Defendant is currently in custody with Riverside
Sheriff's Office.  Based on my training and experience, it is
essential to act quickly and secure a federal arrest warrant for
defendant while he is in a custodial setting because once
defendant is released from custody, he may abscond or evade
apprehension, particularly in light of his prior removal(s) and
unlawful reentry.  Effectuating an arrest while defendant is in
custody is materially safer for officers and defendant and
presents a significantly lower risk of flight or resistance.
Arrests in a controlled environment also reduce the need for

high-risk operations in the community and minimize potential
harm to the public.

8.   I compared a unique fingerprint identifier from the
arrest referenced above against those contained in the
immigration and removal records retained for defendant in DHS
indices.  I have determined that these unique fingerprint
identifiers are the same and therefore believe that both sets of
records reference defendant, a previously removed alien.

9.   On or about May 12, 2025, I conferred with other law
enforcement officers, including DHS personnel, and reviewed
records associated to defendant's unique fingerprint identifier
that are contained in DHS indices.  I learned the following
about defendant's immigration history:

a.   Defendant is a citizen and national of Mexico.

b.   On or about October 3, 1997, defendant was
ordered removed from the United States to Mexico.  On or about
October 3, 1997, defendant was physically removed from the
United States to Mexico.

c.   Since defendant's most recent physical removal
from the United States noted above, defendant was found in the
County of Riverside, in the Central District of California on
July 19, 2024, based on a DHS database notification.

d.   There is no record of any application nor
permission from the Secretary of Homeland Security or the U.S.
Attorney General to re-enter the United States since defendant's
most recent removal.  Based upon my training and experience, as
well as the training and experience of other law enforcement

5

personnel involved in this investigation, I know that a record reflecting such application or permission would ordinarily be found within the DHS indices I reviewed.

### V.  <u>CONCLUSION</u>

10.  For all the reasons described above, there is probable cause to believe that defendant has committed a violation of Title 8, United States Code, Section 1326(a), Illegal Alien Found in the United States Following Deportation or Removal.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 13th day of May
2025.

_____
HONORABLE SHERI PYM
UNITED STATES MAGISTRATE JUDGE